503 S.E.2d 723

**McNICKEL'S, INC., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

**AAA ENTERTAINMENT CORPORATION, McNickel's, Inc., and Nick Santaramo, Appellants,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

**No. 24819.**

Supreme Court of South Carolina.

Heard Feb. 18, 1998.

Decided July 20, 1998.

---

630

H. Fred Kuhn, Jr., of Moss & Kuhn, P.A., Beaufort, for appellants.

General Counsel Harry T. Cooper, Jr., Chief Counsel for Regulatory Litigation Nicholas P. Sipe, and Counsel for Regulatory Litigation Carol I. McMahan, all of South Carolina Department of Revenue, Columbia, for respondent.

TOAL, Justice:

This case presents the question whether the South Carolina Department of Revenue ("Department") exceeded its authority under the Video Game Machines Act when it promulgated the "employee requirement" in 27 S.C.Code Ann. Regs. 117–190 (Supp.1997). We find Department did not and, accordingly, affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Two businesses, Black Burner Cafe and Treasures Revived, are located in a strip shopping center in Hilton Head, South Carolina. Black Burner Cafe occupies # 11 Northridge Road, while Treasures Revived occupies # 13 Northridge Road. The businesses are accessible through a single entrance, leading to a common area. From there, sliding glass doors open onto the two businesses. Paneled walls separate Black Burner Cafe and Treasures Revived. Each of these businesses has five Class III video poker machines on its premises.

In July 1995, revenue officers for Department inspected the businesses and issued a violation report to AAA Amusements, Inc., the licensee of the video poker machines, for violating S.C.Code Ann. § 12–21–2804 (Supp.1997). The report charged that AAA had allowed the use of more than five video poker machines in a "single place or premises," as defined by 27 S.C.Code Ann. Regs. 117–190. During the inspection, only one employee was found in the common area of the businesses (i.e. each business did not have at least one of its own employees present).

AAA appealed the violation report, and Department issued a final determination upholding a fine and revocation of the licenses for the machines. AAA and the others [1] (collectively "Business") appealed Department's final determination to the Administrative Law Judge Division. The administrative law judge upheld the violation on the grounds that each business did not have an employee present in its game room during business hours.

Business appealed to the circuit court, which affirmed the administrative law judge. Business now appeals to this Court, raising one issue:

Did the South Carolina Department of Revenue exceed its regulatory authority under the Video Game Machines Act when it imposed the "employee requirement" found in South Carolina Regulation 117–190? [2]

## Law/Analysis

■ Business argues that Department exceeded its regulatory authority when it imposed the "employee requirement" found in Regulation 117–190. We disagree.

The Video Game Machines Act, S.C.Code Ann. § 12–21–2770 *et seq.* (Supp.1997), governs the licensing and use of video game "machines," which are defined as "electronic video games machine[s] that, upon insertion of cash, [are] available to play or simulate the play of games as authorized by the commission utilizing a video display and microprocessors in which the player may receive free games or credits that can be redeemed for cash." S.C.Code Ann. § 12–21–2772(5) (Supp.1997).

---

1. These included parties who were added because they are the current business license holders or leaseholders at the premises.

2. McNickel's is one of the parties in Business's appeal. During the pendency of the administrative appeal, McNickel's commenced in circuit court a separate action seeking a declaration that Regulation 117–190 is invalid. The circuit court ruled against McNickel's, and McNickel's now appeals. Business's appeal, as well as the appeal of McNickel's, present the same issues. Accordingly, we consolidate the appeal for the purpose of this opinion. *See* Rule 213, SCACR (where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order the appeal to be consolidated).

Under section 12–21–2804, after July 1, 1994, "the commission may not issue nor authorize to be maintained any licenses or permits for more than five machines authorized under Section 12–21–2720(A)(3) [3] at a single place or premises." In July 1995, the Department promulgated the following regulation:

The Video Game Machines Act, found in Article 20, Chapter 21 of Title 12, limits the number of machines that may be located in a "single place" or "premises."

A single place or premises must be a fixed location. It does not include moving property such as a boat or a train, unless such property is permanently affixed to a specific location.

A "single place" or "premises" means a structure surrounded by exterior walls or firewalls consistent with the requirements of the applicable building code (or where no building code is applicable, a one hour rated firewall), provided such exterior walls and firewalls may not have any windows, doors or other openings leading to another area where video game machines are located.

If a structure surrounded by exterior walls has two or more areas where video game machines are located, each surrounded by exterior walls or firewalls as defined and required above, the Department must review all the facts and circumstances to determine if each area in reality constitutes a single place or premise for video game machines. In determining whether each entity is in fact a single place or premises, the Department of Revenue will consider the following factors: (1) Does each entity or business have a separate electric utility meter? (2) *Does each entity or business have at least one separate employee on the premises during business hours?* (3) Does each entity or business have a separate local business license where required? (4) Does each entity or business have a separate state sales tax license? A positive answer to these

---

3. *See* S.C.Code Ann § 12–21–2720(A)(3) (Supp.1997) ("a machine of the nonpayout type, in-line pin game, or video game with free play feature operated by a slot in which is deposited a coin or thing of value except machines of the nonpayout pin table type with levers or 'flippers' operated by the player by which the course of the balls may be altered or changed.").

four questions is required for each area to be considered a "single place or premise" for purposes of The Video Game Machines Act.

S.C.Code Ann. Regs. 117–190 (emphasis added).

Business argues that Department exceeded its regulatory authority when it imposed a requirement that each business must have at least one separate employee on the premises.

While the Legislature may not delegate its power to make laws, in enacting a law complete in itself, it may authorize an administrative agency or board "to fill up the details" by prescribing rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. *Heyward v. South Carolina Tax Comm'n*, 240 S.C. 347, 126 S.E.2d 15 (1962). An administrative regulation is valid as long as it is reasonably related to the purpose of the enabling legislation. *Hunter & Walden Co. v. South Carolina State Licensing Bd. for Contractors*, 272 S.C. 211, 251 S.E.2d 186 (1978). Although a regulation has the force of law, it must fall when it alters or adds to a statute. *Society of Professional Journalists v. Sexton*, 283 S.C. 563, 324 S.E.2d 313 (1984). A rule may only implement the law. *Banks v. Batesburg Hauling Co.*, 202 S.C. 273, 24 S.E.2d 496 (1943).

In *Hunter & Walden*, we addressed the question of the validity of a regulation promulgated by the State Licensing Board for Contractors. S.C.Code Ann. § 40–11–160 (1976) provided that the Board shall not issue a license to any contractor who contracts or intends to contract for a job in excess of $75,000 "until such contractor furnishes the Board with a financial statement certified by a certified public accountant. . . ." The Board had promulgated a regulation providing that in order to comply with section 40–11–160, a contractor must show a net worth of $50,000 to be licensed. This Court found the regulation to be valid because it was "a natural amplification of the Code Section which requires that a financial statement be submitted." *Hunter & Walden*, 272 S.C. at 213, 251 S.E.2d at 186. The challenged regulatory provision bore a reasonable relation to the statutory requirement that a financial statement be submitted with a contractor's application.

More recently, in *U.S. Outdoor Advertising, Inc. v. South Carolina Department of Transportation,* 324 S.C. 1, 481 S.E.2d 112 (1997), we held that a Department of Transportation regulation was reasonably related to the purpose of the Highway Advertising Control Act. The relevant statute declared that a business does not qualify as a commercial or industrial activity unless it is "visible from the main traveled way." The Department of Transportation, by regulation, defined "visible" as "capable of being seen, and readily recognized as a sign or commercial or industrial activity by a person of normal visual acuity." We found that the regulation did not impermissibly expand the requirement of visibility.

We find under the facts of the present case that Department did not exceed its authority in imposing an employee requirement under Regulation 117–190. S.C.Code Ann. § 12–21–2798 (Supp.1997) provides: "The department may promulgate regulations pertaining to the machines and persons licensed by it." [4] The critical question is whether Department exceeded its authority by defining a "single place or premises" to require "at least one separate employee on the premises during business hours." *See* S.C.Code Ann. Regs. 117–190.

Regulation 117–190 sets forth a number of criteria for determining whether an entity is in fact a "single place or premises." These include such tests as whether the entity has a separate utility meter; whether it has a separate local business license; whether it has a separate state sales tax license; and whether it has at least one employee on the premises during business hours. We find that these criteria, including the last one, are reasonably related to the purpose of the statute. Without at least one employee, it would be possible for video poker operators to largely circumvent the "single place or premises" requirement, by securing separate licenses for technically separate, but practically joined, businesses. The single employee criterion is reasonably related to determining whether each entity operates as a separate place. The present regulation is a natural amplification of the statute.

---

4. The section was amended in 1997. The section previously had provided: "The commission shall promulgate rules and regulations pertaining to the machines and persons licensed by it."

Business argues that Department can only regulate *machines* and *persons licensed* by Department and cannot impose requirements upon a *business* in which the machine is located. "Machines," "persons licensed," and the "businesses" that operate them are so interconnected that it would be difficult to issue a regulation bearing on one, but which would not have an effect on another of these entities. Accordingly, we reject this argument.

## CONCLUSION

Based on the foregoing, we **AFFIRM** the orders upholding the validity of Regulation 117–190.

FINNEY, C.J., MOORE and BURNETT, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.